The STATE of Utah, Plaintiff and Respondent,

v.

Keith BRICKEY, Defendant and Appellant.

No. 20107.

Supreme Court of Utah.

Jan. 24, 1986.

Jerome H. Mooney, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty.Gen., J. Stephen Mikita, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

ZIMMERMAN, Justice:

Defendant Keith Brickey appeals from an interlocutory order of the Fourth District Court refusing to quash the circuit court's order binding him over for trial on a charge of forcible sexual assault. Brickey asserts that his due process rights were violated when the State was allowed to refile a criminal charge identical to one that had been dismissed for insufficient evidence at an earlier preliminary hearing. We agree that the due process clause of the Utah Constitution prohibits such a refiling of criminal charges absent a showing of new or additional evidence or other good cause. We reverse and enter a quashal of the bindover order.

The incident underlying these proceedings occurred on August 4, 1984, while the victim was babysitting Brickey's children. At the first preliminary hearing, the victim testified that she and Brickey were talking in the kitchen. He told her she was attractive, and she asked why this was so and what she could do to be less attractive. He responded by moving his hand along her leg to her genital area and touching her breast. When the victim said "Don't," Brickey stopped touching her and tried to kiss her instead.

No other evidence was presented at the initial preliminary hearing. At the close of the State's case, Brickey's counsel moved to dismiss the charge, arguing that because the State did not establish that Brickey had acted without the victim's consent, it had failed to establish a prima facie case of forcible sexual abuse.[1] The circuit court agreed and dismissed the charges.

The prosecutor subsequently refiled the charge. A second preliminary hearing was held before a different judge. The victim once more testified, repeating her earlier testimony and adding that on the day after the incident, Brickey asked her on a date and paid her an extra $20 for babysitting. The victim's father, who had been present at the first hearing but had not been called to the stand, also testified. He stated that when confronted, Brickey admitted "making advances" toward the victim and touching her genital area and breasts.[2]

At the close of this evidence, Brickey's counsel again moved to dismiss, asserting that the State's failure to introduce new evidence relating to the consent issue was fatal to the information. Brickey's counsel also argued that refiling the charge violated Brickey's due process rights. The prosecutor argued that the father's testimony constituted "new evidence" and buttressed

1. A person commits forcible sexual abuse if, under circumstances not amounting to rape or sodomy, or attempted rape or sodomy, he [1] touches the anus or any part of the genitals of another, or otherwise takes indecent liberties with another, ... [2] with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person, [3] without the consent of the other.
U.C.A., 1953, § 76-5-404(1) (1978 ed.). An act is without consent when
   [T]he actor compels the victim to submit or participate by force that overcomes such earnest resistance as might reasonably be expected under the circumstances; or ... compels the victim to submit or participate by any threat that would prevent resistance by a person of ordinary resolution.
U.C.A., 1953, § 76-5-406(1), (2) (1978 ed.). In State v. Kennedy, Utah, 616 P.2d 594 (1980), we discussed the circumstances under which a lack of consent might be inferred. We held that not only physical force but harassment, intimidation, or abuse may constitute a threat which compels a victim to submit without consent. Id. at 597-98.

2. Although Brickey does not raise the issue on appeal, even under the evidence presented at the second preliminary hearing, it is doubtful that his conduct could legally amount to forcible sexual abuse. The statutory term "tak[ing] ... indecent liberties with another" has been twice construed by this Court. See State in re J.L.S., Utah, 610 P.2d 1294, 1296 (1980); State in re L.G.W., Utah, 641 P.2d 127, 129 (1982). In both cases, we held that the brief touching of an individual's clothed breast, buttocks, or genitals did not amount to forcible sexual assault. Brickey's conduct, however, might have constituted lewdness, see U.C.A., 1953, § 76-9-702 (1978 ed.), or given rise to a civil action for battery.

the case sufficiently to require that it be bound over. He also argued that nothing precluded him from refiling charges: "My theory of the prosecution is I disagreed with the [first judge], to be honest with you .... I have a chance to come back here every time and represent evidence until I get it bound over ...."

The circuit court denied Brickey's motion to dismiss and bound him over for trial. The district court refused to quash the bindover order, and this interlocutory appeal followed.

The issue raised is one of first impression in Utah: what are the limits on the State's ability to refile criminal charges when those charges have been previously dismissed for insufficient evidence? Because the federal law on this point is unsettled,[3] we address it under our state constitution's due process clause. Utah Const. art. I, § 7.

■ To fairly evaluate Brickey's claim, the nature and purpose of a preliminary hearing must first be considered. In Utah, the preliminary hearing is used to determine whether there is sufficient cause to believe a crime has been committed to warrant further proceedings. The preliminary hearing thus acts as a screening device to "ferret out ... groundless and improvident prosecutions." *State v. Anderson,* Utah, 612 P.2d 778, 783–84 (1980) (citation omitted). This function is important because it not only relieves the accused of the "substantial degradation and expense" attendant to a criminal trial, but also because it helps conserve judicial resources and promotes confidence in the judicial system. *Id.* at 784.

■ To establish a factual and legal basis for binding the defendant over for trial at a preliminary hearing, the State must introduce "sufficient evidence to persuade the magistrate that there is 'probable cause to believe that the crime charged has been committed and that the defendant has committed it ....'" *Kearns-Tribune Corp. v.*

*Lewis,* Utah, 685 P.2d 515, 520 (1984), *quoting* Utah R.Crim.P. 7(d)(1), U.C.A., 1953, § 77–35–7(d)(1) (1982 ed.). While the preliminary hearing is not a full-blown determination of an accused's guilt or innocence, it is nonetheless a "critical stage" in the criminal process, and proper consideration for a defendant's constitutional rights must be observed. *State v. Anderson,* 612 P.2d at 782 n.9, *citing Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1969). It is with these principles in mind that we must determine whether Brickey's due process rights were violated by the refiling of the criminal charge.

■ After the first preliminary hearing, the circuit court dismissed the charge because the State had failed to establish a prima facie case that Brickey had committed forcible sexual assault. This dismissal, however, did not entirely insulate Brickey from further proceedings. Utah's criminal code specifically provides that dismissal of an information and discharge of an accused "shall not preclude the state from instituting a subsequent prosecution for the same offense." U.C.A., 1953, § 77–35–7(d)(1). This reflects the well-established principle that because a preliminary hearing is not a trial at which guilt or innocence is determined, an accused is not placed in jeopardy at such a proceeding, and the double jeopardy provisions of the federal and state constitutions do not apply. *See, e.g., United States ex rel. Rutz v. Levy,* 268 U.S. 390, 393, 45 S.Ct. 516, 517, 69 L.Ed. 1010 (1925); *United States v. Pitts,* 569 F.2d 343, 346–47 (5th Cir.1978), *cert. denied,* 436 U.S. 959, 98 S.Ct. 3076, 57 L.Ed.2d 1125 (1978); *United States v. Chase,* 372 F.2d 453, 463–64 (4th Cir.1967), *cert. denied,* 387 U.S. 907, 87 S.Ct. 1688, 18 L.Ed.2d 626 (1967); *Richmond v. State,* Wyo., 554 P.2d 1217, 1221–22 (1976).

■ The fact that a subsequent prosecution is not barred by the double jeopardy clause does not mean, however, that the

---

**3.** Most of the federal cases address the issue of refiling charges under the double jeopardy clause rather than under the due process clause.

*See, e.g., United States ex rel. Rutz v. Levy,* 268 U.S. 390, 45 S.Ct. 516, 69 L.Ed. 1010 (1928).

State is free to refile criminal charges under all circumstances. For if this were the case, the State could easily harass defendants by refiling criminal charges which had previously been dismissed for insufficient evidence. Considerations of fundamental fairness preclude vesting the State with such unbridled discretion.[4] *See Jones v. State*, 481 P.2d 169, 171 (Okla.Crim.App. 1971); *Stockwell v. State*, 98 Idaho 797, 573 P.2d 116, 138–39 (1977); *People v. Walls*, 117 Mich.App. 691, 324 N.W.2d 136, 138 (1982).

The State vigorously argues that an accused will be protected from harassment by the good faith of the prosecutor. However, the courts have had occasion to scrutinize the exercise of the broad discretion accorded prosecutors, and that scrutiny has revealed that the prosecutor's good faith is a fragile protection for the accused. Numerous courts have noted the potential for abuse inherent in the power to refile criminal charges. *See Holmes v. District Court*, Colo., 668 P.2d 11, 15 (1983), *citing People v. Freiman*, Colo., 657 P.2d 452, 453 (1983); *Wittke v. State*, 80 Wis.2d 332, 259 N.W.2d 515, 520 (1977); *Nicodemus v. District Court*, 473 P.2d 312, 316 (Okla. Crim.App.1970); *Wilson v. Garrett*, 104 Ariz. 57, 448 P.2d 857, 859 (1969); *Stockwell v. State*, 573 P.2d at 138. In *Wilson, supra*, the court stated that "a criminal prosecution must not be shuttled from one magistrate to another simply because a county attorney is not satisfied with the action of the magistrate in the precinct whose jurisdiction was first invoked." The *Wilson* court's statement reflects precisely what occurred here, where the prosecutor candidly admitted that he was forum-shopping simply because he disagreed with the

decision of the judge who presided at the first preliminary hearing.

To curb such abusive practices, many states have limited prosecutorial discretion to refile charges. Some states have enacted statutes or court rules to limit discretion either through judicial oversight mechanisms or by prohibiting refiling without new or additional evidence, while others have acted through court decisions. *See, e.g.,* Wis.Stat. § 970.04 (1975) (second examination allowed if additional evidence discovered); Idaho Code § 19–815A (1971) (giving defendant method of challenging evidence "educed" [sic] at a preliminary examination); Colo.R.Crim.P. 7(h) (1983) (finding of new or additional evidence may justify refiling); Cal.Penal Code § 871.5 (1982) (prosecutor may move to reinstate complaint on grounds magistrate erroneously dismissed); *Jones v. State*, 481 P.2d at 171; *Stockwell v. State*, 573 P.2d at 138.

We find merit in the approach taken by the Oklahoma courts. In *Jones v. State*, 481 P.2d 169 (Okla.Crim.App.1971), the Oklahoma Court of Criminal Appeals held that due process considerations prohibit a prosecutor from refiling criminal charges earlier dismissed for insufficient evidence unless the prosecutor can show that new or previously unavailable evidence has surfaced or that other good cause justifies refiling. 481 P.2d at 171. The *Jones* court further held that when a charge is refiled, the prosecutor must, whenever possible, refile the charges before the same magistrate who does not consider the matter de novo, but looks at the facts to determine whether the new evidence or changed circumstances are sufficient to require a re-examination and possible reversal of the earlier decision dismissing the charges. *Id.* at 171–72.[5] Imposing this requirement on

---

**4.** The state and federal cases cited by the State to support its position that there are no constitutional limitations on the prosecutor's ability to refile criminal charges addressed the issue as a double jeopardy problem, rather than one of due process. *See, e.g., Richmond v. State*, Wyo., 554 P.2d 1217, 1221–22 (1976); *United States ex rel. Rutz v. Levy*, 268 U.S. 390, 393, 45 S.Ct. 516, 517, 69 L.Ed. 1010 (1925). Those cases are there-

fore not persuasive to us in interpreting our state constitution's due process clause.

**5.** In *Harper v. District Court*, Okla., 484 P.2d 891 (1971), the Oklahoma court clarified *Jones,* holding that good cause to continue a preliminary hearing for further investigation might exist when a prosecutor innocently miscalculates the quantum of evidence required to obtain a bindover and further investigation clearly

prosecutors places a relatively small burden on them, yet adequately protects the due process interests of an accused. We therefore adopt this approach for Utah.

 In the instant case, no new or previously unavailable evidence relating to the issue of consent was introduced. Under these circumstances, there was no good cause for refiling the charge against Brickey, and the district court should have quashed the bindover.

Reversed.

HALL, C.J., and HOWE and DURHAM, JJ., concur.

STEWART, J., concurs in the result.

---

would not be dilatory. 484 P.2d at 897. In addition, the Oklahoma Supreme Court has added a new Rule 6 to the Rules of the Court of Criminal Appeals, permitting the state to appeal from an adverse ruling at a preliminary hearing. *See State ex rel. Fallis v. Caldwell,* 498 P.2d 426, 428–29 (Okla.Crim.App.1972).